IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION


DIANNIA MECHELL SMULLIN                                         PLAINTIFF


VS.                              CASE NO. 3:16CV00287 PSH


NANCY A. BERRYHILL, Acting Commissioner,
   Social Security Administration                               DEFENDANT



**ORDER**

Plaintiff Diannia Mechell Smullin ("Smullin"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny her claim for Supplemental Security Income benefits (SSI), contends the Administrative Law Judge's (ALJ) decision that she is not disabled is not supported by substantial evidence. Specifically, Smullin faults the ALJ for failing to consider the combined effects of her impairments, for mischaracterizing her medical care as "conservative," and for erroneously analyzing her mental impairments. The parties have ably summarized the medical records and the testimony given at the administrative hearings conducted on May 24, 2013 and December 16, 2015. (Tr. 26-47, 325-336). Two hearings were in order because this Court remanded the case for further proceedings. (Tr. 367-373). The instructions on remand were specific – the Court directed the ALJ to determine if Smullin's sleep apnea was disabling, and instructed that the ALJ should not discount the severity of the sleep apnea solely because Smullin does not treat the apnea with a C-Pap machine, which she could not afford. The Court has carefully reviewed the record to determine whether there is substantial evidence in

1

the administrative record to support Berryhill's decision. 42 U.S.C. § 405(g). The relevant period for purposes of this action is from November 4, 2011, the application date, through March 9, 2016, the date of the ALJ's decision.

*Administrative Hearing:*

At the second administrative hearing, Smullin stated she was 44 years old, had the equivalent of a high school grade education, lives with her husband, and has past relevant work as a housekeeping cleaner. When asked why she was unable to work, Smullin stated "I have a lot of pain in my joints and back; take a lot of medications and stay tired a lot. That's about it." (Tr. 326). She estimated she could walk for 30 minutes and could lift 8-10 pounds. A normal day, according to Smullin, involved sitting, watching television, and reading. She stated she did the dishes and vacuumed the house. Smullin testified to seeing a therapist weekly, and to taking Ambien, Amitryptiline, Ranitidine, Pravastatin, Latuda, Trazadone, Flexeril, and Tramadol. She indicated she remained unable to afford a C-pap machine, consistent with her testimony in the earlier hearing. Smullin said she was often tired, and took two naps on some days. She also described being diagnosed with lupus, which contributed to her fatigue. (Tr. 326-333).

Carla Brown "(Brown")", a vocational expert, testified. The ALJ asked Brown to assume a hypothetical worker of Smullin's age, education, and experience, who could perform light work with numerous restrictions.[1] Brown indicated such a worker could not perform Smullin's past work, but could perform jobs in the national economy, such as the jobs of routing clerk or mail clerk. If the

---

[1] The restrictions were: only occasionally stoop, crouch, crawl, and kneel; no exposure to respiratory irritants; only perform work where interpersonal contact is incidental to the work performed; perform work where the complexity of tasks can be learned by demonstration or repetition within 30 days with few variables and little judgment; and perform work where the supervision required is simple, direct, and concrete.

hypothetical question was altered to include a worker who was off task and had to be redirected every 60 to 90 minutes, Brown testified no jobs would be available. (Tr. 333-335).

*ALJ's Decision:*

In his March 2016 decision following the second administrative hearing, the ALJ determined Smullin had the severe impairments of lupus, COPD, asthma, obstructive sleep apnea, GERD, hypertension, lumbago, bipolar I disorder, panic disorder, and obesity. The ALJ considered the criteria of "paragraph B," finding Smullin to have mild limitations of daily living, moderate limitations in social functioning, mild limitations regarding concentration, persistence, and pace, and no episodes of decompensation. The ALJ assessed Smullin with the residual functional capacity ("RFC") to perform light work with the limitations which mirrored those specified in the first hypothetical question posed to Brown, and which are listed in footnote one herein. In reaching his RFC conclusion, the ALJ found Smullin's testimony was "not entirely credible," citing the objective medical evidence, conservative treatment, improvement with treatment, failure to follow treatment (e.g., continuing to smoke), and Smullin's daily activities. The ALJ considered various GAF ratings assigned to Smullin during the course of her treatment. Relying upon the testimony of Brown, the ALJ found Smullin was not disabled since she could perform the jobs of routing clerk and mailroom clerk.

***ALJ's failure to consider the combined effects of Smullin's impairments.***
Smullin argues there is no indication the ALJ considered the combined effects of her impairments, and that the ALJ "seemed to have forgotten that both Congress and this circuit" require a consideration of the combined effect of a claimant's impairments rather than an assessment of the impairments in isolation. Docket entry no. 15, page 22. There is no merit in this argument. The

3

ALJ wrote that the issue in the case was whether Smullin was disabled, which he defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment *or combination of impairments* . . ." (Tr. 346) (emphasis added). Thus, the ALJ's finding that Smullin was not disabled was, by definition, a finding that the combined impairments did not render her unable to engage in substantial gainful activity.

### *ALJ error in assessing the medical care as "conservative."*

Smullin contends the "ALJ falsely stated that conservative treatment precludes disability and that affected the outcome of his decision." Docket entry no. 15, page 23. The ALJ's comments on the nature of treatment received by Smullin were part of the RFC assessment. After detailing Smullin's treatment for GERD, hypertension, asthma, irritable bowel syndrome, chest pain, sleep apnea, COPD, chronic pain, and mental impairments, the ALJ wrote:

> Overall, the claimant has only had conservative treatment. By conservative means, the claimant has been prescribed medication, followed up with routine appointments, and received injections to help manage her conditions. The record does not reflect that the claimant's conditions ha[ve] required her to have any hospitalization, surgeries or other aggressive treatment methods in order to manage her conditions, rendering all the treatment to be conservative. However, conservative treatment is inconsistent with allegations of disability.

(Tr. 353). In addition to citing the conservative nature of treatment, the ALJ also observed Smullin's back pain, asthma, and mental impairments improved with treatment, and that she failed to follow prescribed treatment with regard to her asthma and COPD. These factors, along with the objective medical evidence and her daily activities, contributed as a group to the credibility assessment and the RFC determination. In other words, the RFC determination did not hinge solely upon the ALJ's characterization of treatment as conservative.

Citing cases from the Ninth Circuit Court of Appeals, Smullin urges that conservative

4

treatment would involve over-the-counter medications or a physician's failure to prescribe serious treatment for excruciating pain. *See Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) and *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999). Smullin does not counter the ALJ's finding that she did not require hospitalization or surgery. Thus, the parties quarrel over what constitutes conservative treatment. We are inclined to agree with the ALJ's view on the nature of the treatment. However, mindful that the nature of the treatment was one of several pertinent factors, we find that even if we were to presume the treatment was aggressive rather than conservative, the ALJ's overall analysis which resulted in the RFC finding was supported by substantial evidence.

### *ALJ erroneously analyzed her mental impairments.*

Smullin urges the ALJ erred when he found her able to perform unskilled work. According to Smullin, her mental impairments would not support this ability. She cites the 2014 treatment records[2] from Dayspring Behavioral Health ("Dayspring") to support her argument. In addition, Smullin disputes the ALJ's conclusion of improvement with treatment and medication.

The medical records show treatment at Dayspring from July 2014 through March 2016. Smullin was initially diagnosed with bipolar I disorder and panic disorder without agoraphobia, and her medical conditions were listed as high blood pressure, arthritis, chronic pain, and reflux. A treatment plan, with four measurable objectives, was initiated. (Tr. 834). Over the course of the treatment, Dayspring employees noted improvement in all four objectives. This is not to say that she was without issues. Although Smullin's bipolar I disorder diagnosis was in partial remission,

---

[2] A consultative mental evaluation was performed by Dr. Kenneth Jones ("Jones") during the early stages of the relevant period. This 2012 evaluation reflected Jones' opinion that Smullin had no limitations in adaptive functioning, communication or coping with the basic work-like tasks or demands. The ALJ only gave Jones' opinion some weight, acknowledging that Smullin's mental condition declined later in the relevant period. (Tr. 255-260).

she continued to have anger issues directed at her husband, and was also diagnosed with avoidant personality disorder. The medical records also reflect improvement when Dayspring employees prescribed Latuda in 2015. Smullin testified at the December 2015 administrative hearing that she continued on the Latuda, and continued seeing her therapist. She stated, "I like my therapist. He's nice. He's actually helped me improve quite a bit with my temper and stuff." (Tr. 327).

The inquiry for this Court is whether the ALJ erred in assessing Smullin's mental abilities. Initially, we note the ALJ included non-exertional limitations in an attempt to account for her mental impairments.[3] These limitations included variables limiting interpersonal contact, the complexity of the tasks to be performed, and the type of supervision to be given on the job. We find substantial evidence, including Smullin's testimony and the medical records, to support the ALJ's assessment of her mental impairments, as well as his allowances for those impairments in his RFC ruling. There is no error in this regard.

Smullin finally argues the ALJ failed to fully and fairly develop the record, and that he should have re-contacted her treating or examining physicians and/or sent her for additional consultative examinations. We disagree. Smullin fails to demonstrate how the voluminous record was inadequate and how additional reports would cure the inadequacy. The objective medical evidence in this case, including both a physical and mental consultative examination, was ample and the ALJ's decision was well-informed. *See Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011) (ALJ not required to order additional medical exams unless the existing medical record is

---

[3] One of the limitations imposed by the ALJ was to restrict Smullin to unskilled work. In this regard, the ALJ disagreed with the opinion of the state agency psychologist, who opined that Smullin could perform semi-skilled work. The ALJ further noted that his assessment of Smullin's mental impairments was not controverted by any treating or examining provider. (Tr. 356).

insufficient). Under these circumstances, we find no error in the ALJ's reliance upon the record before him.

In summary, we find the ultimate decision of Berryhill was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Berryhill is affirmed and Smullin's complaint is dismissed with prejudice.

IT IS SO ORDERED this 11th day of June, 2017.

_____
UNITED STATES MAGISTRATE JUDGE